# Exhibit A

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General ("OIG-HHS") of the Department of Health and Human Services ("HHS") (collectively, the "United States"), Douglas R. Mienk, M.D., and Relator Amber West (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.  Dr. Mienk is a physician practicing at, among other locations, 10785 South Grant Avenue, Clare, MI 48617. Dr. Mienk provides services to, among others, individuals insured by the Medicare Program ("Medicare") administered by HHS through the Centers for Medicare and Medicaid Services ("CMS"), and the Medicaid Program ("Medicaid") jointly administered by CMS and the Michigan Department of Community Health.

B.  On September 30, 2011, Relator Amber West filed a *qui tam* action in the United States District Court for the Western District of Michigan captioned *United States, et al. ex rel. West v. U.S. Rehab Services P.C., et al.*, No. 1:11-CV-1051 (W.D. Mich.), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). In the Civil Action, Relator alleged, among other things, that health care entities owned and/or controlled by Babubhai B. Rathod (the "Rathod Companies"), by and through their corporate principals, paid illegal remuneration and/or kickbacks to medical practitioners in order to induce the referral of patients to the Rathod Companies

for health care services. The United States intervened in the Civil Action on May 29, 2012 and filed its Complaint Upon Intervention on September 19, 2012.

C. The United States contends that Dr. Mienk submitted or caused to be submitted claims for payment to Medicare, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1.

D. The United States contends that it has certain civil claims against Dr. Mienk arising from claims that the Rathod Companies submitted to Medicare between October 1, 2010 and January 24, 2012 for physical therapy, electrodiagnostic testing, and/or home health care services that Dr. Mienk referred to the Rathod Companies in exchange for illegal remuneration and/or kickbacks in violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b, the physician self-referral statute (the "Stark Law"), 42 U.S.C. § 1395nn, and the False Claims Act, 31 U.S.C. § 3729, *et seq*. That conduct, described more fully in the United States and State of Michigan's Complaint Upon Intervention, is referred to below as the "Covered Conduct."

E. Relator claims entitlement under the False Claims Act, 31 U.S.C. § 3730(d), to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorney's fees and costs.

F. This Settlement Agreement is not an admission of liability by Dr. Mienk, nor is this Settlement Agreement a concession by the United States that its claims are not well founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1. Dr. Mienk shall pay to the United States THIRTY TWO THOUSAND, FIVE HUNDRED DOLLARS ($32,500) (the "Settlement Amount") by electronic funds transfer pursuant to written instructions to be provided by the Office of the United States Attorney for the Western District of Michigan no later than 20 days after the Effective Date of this Agreement.

2. Dr. Mienk shall pay to Relator expenses, attorney's fees, and costs in an amount to be negotiated by Relator and Dr. Mienk, or as set forth in an order from the United States District Court for the Western District of Michigan, as the case may be.

3. Subject to the exceptions in Paragraph 5 (concerning excluded claims) below, and conditioned upon Dr. Mienk's full payment of the Settlement Amount, the United States releases Dr. Mienk from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. § 3729, *et seq.*; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. § 3801, *et seq.*; the civil monetary penalty provisions of the Stark Law, 42 U.S.C. §§ 1395nn(g)(3), 1395nn(g)(4); and the common law theories of payment by mistake, unjust enrichment, and fraud.

4. Subject to the exceptions in Paragraph 5 below, and conditioned upon Dr. Mienk's full payment of the Settlement Amount, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases Dr. Mienk from any civil monetary claim Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. § 3729, *et seq.*

5. Notwithstanding the releases given in Paragraphs 3 and 4 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory or permissive exclusion from Federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    g. Any liability for failure to deliver goods or services due;

    h. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct; and

    i. Any liability of individuals who receive written notification that they are the target of a criminal investigation (as defined in the United States Attorneys' Manual), are indicted or charged, or who enter into a plea agreement, related to the Covered Conduct.

6. Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). In connection with this Agreement and this Civil Action, Relator and her heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the United States in the Civil Action in order to dismiss the Civil Action, nor any dismissal of the Civil Action, shall waive or otherwise affect the ability of the United States to

contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), bar Relator from sharing in the proceeds of this Agreement. Moreover, the United States and Relator and her heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that Relator should receive of any proceeds of the settlement of her claim(s) and that no agreements concerning Relator share have been reached to date.

7. Relator, for herself, and for her heirs, successors, attorneys, agents, and assigns, releases Dr. Mienk from any liability to Relator arising from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

8. Dr. Mienk waives and shall not assert any defenses Dr. Mienk may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code, or State revenue laws.

9. Dr. Mienk fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Dr. Mienk has asserted, could have asserted, or may assert in the future against the United States, its agencies,

officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

10. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and Dr. Mienk agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, and agrees not to appeal any such denials of claims.

11. Dr. Mienk agrees to the following:

    a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of Dr. Mienk in connection with:

    (1) the matters covered by this Agreement;

    (2) the United States' audit(s) and civil and criminal investigation(s) of the matters covered by this Agreement;

    (3) Dr. Mienk's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and criminal investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

    (4) the negotiation and performance of this Agreement; and

    (5) the payment Dr. Mienk makes to the United States pursuant to this Agreement and any payments that Dr. Mienk may make to Relator, including costs and attorney's fees

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program ("FEHBP") (hereinafter referred to as "Unallowable Costs").

   b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by Dr. Mienk, and Dr. Mienk shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by Dr. Mienk to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

   c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: Dr. Mienk further agrees that within 90 days of the Effective Date of this Agreement he shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by Dr. Mienk, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. Dr. Mienk agrees that the United States, at a minimum, shall be entitled to recoup from Dr. Mienk any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by Dr. Mienk on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on Dr. Mienk's cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Dr. Mienk's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

12. Dr. Mienk agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Dr. Mienk further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in his possession, custody, or control concerning any investigation of the Covered Conduct that he has undertaken, or that has been performed by another on his behalf.

13. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 14 (waiver for beneficiaries paragraph), below.

14. Dr. Mienk agrees that he waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

15. Upon receipt of the payments described in Paragraph 1, above, the Parties shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1).

16. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

17. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

18. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Michigan. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

20. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

21. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

22. This Agreement is binding on Dr. Mienk's successors, transferees, heirs, and assigns.

23. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

24. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

25. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

**THE UNITED STATES OF AMERICA**

PATRICK A. MILES, JR.
U.S. Attorney

DATED: 4/28/14    BY: *Adam B Townshend*
ADAM B. TOWNSHEND
Assistant U.S. Attorney
P.O. Box 208
Grand Rapids, MI, 49501
Tel: (616) 456-2404

DATED: 4/28/14    BY: *Robert K. Deconti*
ROBERT K. DECONTI
Assistant Inspector General for Legal Affairs
Office of Counsel to the
 Inspector General
Office of Inspector General
United States Department of
 Health and Human Services

**DOUGLAS R. MIENK, M.D.**

DATED: 02-27-2014 BY: _____
DOUGLAS R. MIENK, M.D.

DATED: 3.9.14 BY: _____
CHARLES E. CHAMBERLAIN, JR.
Willey & Chamberlain LLP
940 Trust Building
40 Pearl Street NW
Grand Rapids, MI 49503

Counsel for Dr. Mienk

11

**AMBER WEST**

DATED: 3-26-14 BY: _____
Amber West

DATED: 3-17-14 BY: _____
CHARLES M. FORTINO by Anthony G. Costanzo
Fortino, Plaxton & Costanzo, P.C.
214 East Superior Street
Alma, MI 48801

Counsel for Amber West

DATED: _____ BY: _____
ALAN G. GILCHRIST
The Health Law Partners, P.C.
29566 Northwestern Highway, Suite 200
Southfield, MI 48034

Counsel for Amber West

**AMBER WEST**

DATED:_____ BY: _____
                     Amber West


DATED:_____ BY: _____
                     CHARLES M. FORTINO
                     Fortino, Plaxton & Costanzo, P.C.
                     214 East Superior Street
                     Alma, MI 48801

                     Counsel for Amber West

DATED: 3/14/14 BY: _____
                     ALAN G. GILCHRIST
                     The Health Law Partners, P.C.
                     29566 Northwestern Highway, Suite 200
                     Southfield, MI 48034

                     Counsel for Amber West

12